# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

George Finley, Plff. in Err., *v.* City of Pittsburgh, to the Use of W. R. Dickson.

The owner of a sidewalk, when notified by a street commissioner, is bound to pave it or submit to have it paved for him by a contract of that officer.

Where the owner of a sidewalk neglects to pave after being notified by the street commissioner, the commissioner can make a contract to have the paving done, without advertising for bids, in the absence of any law or ordinance specially requiring him so to do.

(Argued November 3, 1887.   Decided November 11, 1887.)

Cited in Pittsburg v. Daly, 5 Pa. Super. Ct. 528, 537, 41 W. N. C. 240, 28 Pittsb. L. J. N. S. 115.

NOTE.—Assessments for the construction of sidewalks are distinctly referable to the power of the police, and are not dependent upon the taxing power, hence it is not material to the right of lien whether the property is rural or urban.   Philadelphia v. Weaver, 14 Pa. Super. Ct. 293.   When ordered, a liability is incurred for neglect to perform the duty, and he is bound to pay the municipality for the cost it has been put to in doing what he should have done.   Pittsburg v. Daly, 5 Pa. Super. Ct. 528, 41 W. N. C. 240, 28 Pittsb. L. J. N. S. 115; Beltzhoover v. Maple, 130 Pa. 335, 18 Atl.. 650.   And this is true where the sidewalk is ordered to be relaid.   Smith v. Kingston, 120 Pa. 357, 14 Atl. 170; Philadelphia v. Monument Cemetery Co. 147 Pa. 170, 23 Atl. 400.   But this is not true where the change is required by an alteration of grade.   Philadelphia v. Henry, 161 Pa. 38, 23 Atl. 946.   Nor can he be required to lay the same on a new street, where an appeal from the award of viewers is pending.   Connellsville v. Hogg, 156 Pa. 326, 27 Atl. 25.

October Term, 1887, No. 199, W. D., before GORDON, Ch. J., PAXSON, STERRETT, and WILLIAMS, JJ. Error to Common Pleas No. 2 of Allegheny County to review a judgment in favor of the plaintiff on a scire facias on a municipal claim. Affirmed.

The facts are fully stated in the charge of the court below, WHITE, J., which was substantially as follows:

The claim of the plaintiff in this case is for the expense of a sidewalk placed in front of the defendant's lot on Frankstown avenue. The lot has a frontage on the avenue of 514 feet, and the amount claimed and for which the lien is filed, was $390.75, with 6 per cent interest thereon. This amount is at the rate of 75 cents per square yard for the brick pavement put down, and 25 cents a foot for some curbstone that had to be reset. There is no dispute as to the amount claimed in this case. It is admitted, if the defendant is liable, the amount is correct.

The claim on behalf of the city is by virtue of an act of the legislature of the 18th of April, 1857. The 1st section of that act is in these words: "The select and common councils of the city of Pittsburgh shall have power to direct or require any owner or owners of any lot or lots, fronting or abutting on any street or streets, alley or alleys, within the city aforesaid, which have been or may hereafter be directed to be graded and paved, to prepare and set, or cause to be prepared and set, hewn curbstone of good and sufficient quality, in front of his, her, or their lot or lots, and at such grade and place as shall be directed by the city regulator, and shall have the power to direct or require any owner or owners having any lot or lots fronting as aforesaid on any street or streets, alley or alleys, or abutting on any court or courts, to pave, or cause to be paved, the foot or sidewalk fronting or abutting thereon, with good hard brick or flagstone, of such quality as shall be approved by the city regulator or street commissioner." The 2d section then provides that if the owner, after twenty days' notice, fails or neglects to put down the pavement, the street commissioner may order it to be done, and that a lien then may be filed in court against the lot in the name of the city, for the use of the contractor who did the work.

That is the act of assembly.

In pursuance of that act of assembly, the city councils passed an ordinance in these words: "Whenever the cart way of any street shall have been paved, or shall hereafter be paved, and

set with curbstones, it shall be the duty of the owner or owners of any lot of ground abutting thereon, without delay to cause a footway in front of said lot to be paved with brick or flagstone, and if he neglects so to do, the street commissioner of the proper district shall give said owner written notice according to law, requiring him to pave the same within twenty days thereafter."

That ordinance was passed then in pursuance of the act of assembly, and made it the duty of the lot owner immediately after the grading and paving of the street to pave his sidewalk, and authorized the street commissioner to give notice and require it to be done. In pursuance of that act of assembly and that ordinance, the street commissioner required the defendant to pave or brick the sidewalk in front of his lot. He gave notice that he would not do so, and protested against the city doing it at his expense, claiming that the city had no right under any law to require him to pave it or to hold him liable for the expense if done by the city.

The defendant resists this claim on several grounds. I will notice these various grounds of defense in their order: First, that he had a good sidewalk made with cinders, and that there was no necessity of disturbing that by putting down a brick pavement. He says that he had hauled a large amount of cinders and made a good sidewalk some years before the order to put down a brick pavement. I do not think that is a good defense. The city has power, under an act of assembly, to require the lot owners to put down a brick pavement. It first had the power to require a brick pavement or a flag pavement, and subsequent acts have given it a discretion to allow other kind of pavements. If a man voluntarily, without the consent or sanction of the city, puts down a cinder pavement, the city is not bound to accept it, and may require him to conform to the law. . . .

It is also said that in front of some other lots along this avenue, paved at the same time that the defendant's sidewalk was paved, the street commissioner did not require the owners to pave the entire width of the sidewalk. The sidewalk along that avenue is 10 feet, and taking off a half foot for the curbstone, it leaves about 9½ feet between the curb and the line of the lots, which was the distance of this pavement as paved. In some places along the avenue the lot owners were permitted to pave only one half the pavement. I do not think that is a good ground of defense for the defendant. Perhaps if he had

gone to the street commissioner he might have been permitted to pave his one half; but whether so or not, when the city on the default of the lot owner is compelled to pave the sidewalk, it has a right to pave it to the full width. In that case it may sometimes be a little unjust, but it is within the sound discretion of the councils and the city street commissioner, and I cannot see that we have any power to say that it was improper.

[The second ground of defense is that the street commissioner did not advertise for bids for this work before he gave the contract for the pavement to Mr. Dickson, and this contention is based on the act of the 23d of May, 1874, and an ordinance of the city which I shall refer to after I refer to the act. The section of the act referred to is this: "All stationery, printing, paper, and fuel used in the councils and in other departments of the city government, and all work and materials required by the city, shall be furnished, and the printing and all other kinds of work to be done for the city, shall be performed under contract, to be given to the lowest responsible bidder, under such regulations as shall be perscribed by ordinance; and it shall be the duty of councils forthwith to enact such ordinances." An ordinance passed by the city councils on the first of June, 1881, doubtless intended to carry out that act of the legislature, which says that "all work, material, or supplies, except those, the letting of which by contract is already provided for by ordinance, required by any department of the city, shall be done or furnished under contract to be given to the lowest responsible bidder. All contracts exceeding in value the sum of $50, shall be let or entered into only after proposals therefor shall be invited by advertisement in the official newspapers of the city for not less than five days."

The counsel also refers to a section of the Code which was adopted on the 13th of April, 1869, under the head of "Streets," § 15: "When an ordinance for the grading and paving or macadamizing of any street or alley, or the construction of any sidewalk or sewers in the city of Pittsburgh, shall have been passed by councils, it shall be the duty of the city engineer to advertise for proposals and under the direction of the committee on streets or the road committee, as the case may be, to contract with the lowest and best bidder for furnishing materials and performing the work proposed." A part of the same ordinance of the Code is the section I referred to before which speaks about paving the

sidewalk of a street that had already been graded or paved, or that might thereafter be graded or paved, requiring the owner to put down the pavement; and on his default the street commissioner is directed to cause the pavement to be put down at the expense of the owner. These two sections of the same ordinance of the Code certainly are not intended to conflict, and they really apply to two different classes of cases. The act that I first referred to was passed in 1857; that required the pavement to be either brick or flagstone and that applied to streets that were already graded and paved, and only to such. The act of the first of April, 1868, which was a supplement to the new charter of the city, enlarges the powers of the councils in reference to the paving and grading of the sidewalks; it removed the restrictions and limitations imposed by the act of 1857 and allowed the councils to authorize any other kind of pavement. It also contained this section:

"Councils shall be and are hereby authorized, whenever they may deem proper, to contract for the making of sidewalks upon any street, alley or square of said city, in the same manner that contracts are now made for the grading and paving of streets, and the cost and expense thereof shall be assessed upon the property abutting on said streets, in the same manner that the cost and expense of grading and paving is now assessed, and all laws relating to the filing of liens and collecting assessments for grading and paving in said city, shall be held to apply to the cost and expense of claims for the making of sidewalks."

The act of 1857 applied only to sidewalks of streets that had been graded and paved. This act of 1868 enlarges the powers of the city and enables the city to make sidewalks, even where the street is not graded and paved; but in making the sidewalk it had to be done in the same manner that the city was required to do in making, grading, or paving a street, and the harmony with that legislation is the section of the Code which requires advertising; because, when the city lays out a street, or grades and paves a street, it pays the expense. So when the city undertakes to construct a sidewalk and grade it, perhaps including also the paving of it, it is done by the city under this act of assembly, and is a contract of the city for which it is liable, just the same as for the grading and paving of streets. I think that section applied to cases of that kind—the construction and making of a sidewalk. And

the section of the ordinance evidently means all work referring to the grading and paving or macadamizing of any street. It says "or the construction of any sidewalk," and the act of assembly says "giving the city power to make sidewalks."

Under the act of 1857, under which this claim or lien is filed, the city is not responsible for the amount at all; it is not a debt, nor does the city pay the contractor who puts down the pavement. The city is not liable to him. The act of assembly makes it the duty of the lot owner to put down the pavement; if he fails to do it after twenty days' notice, it then authorizes the city to have it done at his expense, and the lien is filed in the name of the city but for the use of the contractor and the amount goes to the contractor; in this aspect of the case I do not think it comes within the statute of 1874. It is not work done for the city; it is not material furnished for the city, or for any department of the city; the city is rather an agent for the owner after his neglect to do what the act of assembly requires him to do; hence, I do not think this is a good ground of defense.

Nor do I think the street commissioner was required to advertise for bids in the case. It cannot work to the prejudice of the lot owner, because I think he has his defense when the contractor undertakes to collect the amount charged for the pavement. It is not like the reports of viewers appointed under the law to make assessments which are conclusive unless the party appeals from it; but here the work is done by the contractor, and he substantially sues for the price of his work and material, and if he has charged too much, the owner can defend and say that it is not worth that much; there the owner has a sufficient protection aganist any exorbitant charge.] 1

[A third ground of defense is that the lien filed is irregular or defective, because it describes the defendant's lot as extending back from Frankstown avenue 120 feet. His lot extends back from 500 to 700 feet from the avenue, and this lien then, according to that, would only be filed against a part of his lot—the front of it. I understand the lien to say 120 feet more or less. But I do not think that is a sufficient ground for defense, because if it is irregular or defective, it can be remedied. We have the act of the 24th of January, 1864, which provides as to "municipal assessment heretofore made and the municipal liens of the city heretofore filed in the district court of said county." Well, that only applies to what was done be-

fore the passage of that act. But there is another act, that of the first of April, 1868, which says the municipal claims for taxes, liens, public assessments, or charges may be amended at any time before or at the trial, on notice given to the defendant under rule of court, provided, that on the trial a continuance may be granted by the court on application by the defendant; so that, if that was an irregularity and was material, it might be corrected, though I cannot see that it prejudices or injures the defendant in any way. Perhaps the lien might have filed against the whole lot. I do not know that this objection strikes at the validity of the lien. At all events, I say to you that that is not such an irregularity as will make out a defense on the part of the defendant in this case.] 2

A fourth ground of defense is that the avenue having been graded and paved under what is known as the "Penn avenue act" of the 2d of April, 1870, the city had no authority to direct the pavement of sidewalk under the act of 1857. The act known as the "Penn avenue act" was a special act passed for the improvement of Penn avenue, this city. It was afterwards amended, or a supplement added to it, allowing other streets to be graded and paved in the same manner. The act provided for commissioners to be appointed. I believe the lot owners selected the commissioners. The commissioners directed the grading and paving of the street and after it was done the whole cost was assessed on the properties abutting on the avenue, to the depth of 120 feet; and the amount was made payable in annual instalments extending over several years, the city issuing bonds for the whole amount, interest, and costs, these bonds being disposed of by the commissioners. Under that act very many streets in the outer portions of the city were improved. . . . Under that act the commissioners could not only grade and pave the cart way and set it with curbstone, but could, I understand, also pave the sidewalk and charge that up as a part of the expense of the improvement, which was done in some cases. In this case it was not done. I believe it included the setting of the curbstone as well as the grading and paving of the avenue, but did not include the paving of the sidewalk. That was done in 1872, and the sidewalks were not required to be paved until 1884, some twelve years after the avenue had been graded and paved. Now the contention is on the part of the defendant that the commissioners ought to have paved the sidewalk at that time, and not

having done so, the city has no power at any subsequent date to require the lot owners to pave their sidewalks. I do not so understand the law. . . . . I think the city ought not to have delayed requiring the property owners at once to pave their sidewalks, but I think the delay does not defeat the right to require it when it is deemed advisable to; hence, I say the city still had the power under the act of 1857, to require the property owners to pave their sidewalks, because that act referred generally to streets graded and paved, no matter how or when.

[A fifth ground of defense is that this is rural property and not liable for street assessments under the acts of the city requiring property owners to pay for the grading and paving of a street or for the paving of sidewalks. This contention is based on the decision in what is known as the Seely Case, Seely v. Pittsburgh, 82 Pa. 360, 22 Am. Rep. 760, an assessment, I believe, under the Penn avenue act. In that case it was held that under these acts for the grading and paving of streets in the city charging the expense according to the foot front of the property was not a legal or constitutional mode of taxing or assessing property. The frontage rule would not apply to what is known as rural property, distinguished from city property. And it is contended that the same principle will apply to sidewalks. It is very difficult to draw the line between what is rural property and city property in the sense of these statutes. The word rural means country; it applies to the country as distinguished from the city; its ordinary and true meaning applies to farm lands and agricultural lands as distinguished from city or town property. To constitute the property city property in view of these statutes and to make it liable as such it is not necessary that all the lots on the street should be of the same size; it is not necessary that all of them should be small city lots; it is not necessary that the streets should be built up compactly, solidly, like the principal streets of the city; it is not necessary that all the houses along the street should be of the same character. There may be some very costly ones and some very cheap ones; it is not necessary that every lot should be built up. There may be a large lot, owned by a wealthy man, of several acres; that may be really near the heart of the city; it may be surrounded by streets that are built up and used by citizens of the city; there may be some little lots, with small tenements and some very large lots with costly tene-

ments, still it may be city property; it is not country. It is not rural in the sense that exempts it from its liability as a city lot. I doubt not that the principle of the Seely Case may apply to sidewalk pavements, as well as to the grading and paving of streets, but it has to be applied with sound judgment. The fact that the assessors under the acts of assembly have returned this as rural property is not conclusive at all that it is such in view of these statutes, or the decision of the supreme court. Those statutes are for the purpose of taxation for city purposes, and have no reference to cases of this kind.

It was contended very properly that where persons living in the outer portions of the city had large bodies of land laid out in lots, in view of its coming into the market, to tax that as high as other lots where they were built up, would be unjust, and hence the statute as finally modified makes three classes, it seems, in the city; one class is where the streets are compactly built up. A second class is the rural or suburban property. Suburban is not really synonymous with rural; it is used in the statute, I apprehend, to distinguish it from farms or agricultural lands. Then a third class is lands that are used wholly for agricultural purposes; they, properly, are country. But I say this classification under the statute for taxation for city purposes does ont control in this case at all. The word rural, too, in the sense in which we are discussing it, to make property exempt from assessments of this kind, may apply to boroughs as well as to the city, because in the general borough law, which applies to nearly all the boroughs of the state, the property owners are bound to pave their sidewalks in front of their lots. It is the law of the boroughs throughout the state as well as the city of Pittsburgh. Councils may require the pavement of sidewalks, and I know cases myself where property owners of a borough have been required to make pavements to a greater length than the defendant in this case. The property in the outskirts of the city may be liable as well as the property in the compactly built up portions of the city, because the sidewalk, as a general rule, is largely for the benefit of the lot itself. A man that has a lot, small or large, fronting on a street, hardly has his property properly improved without a good sidewalk; it is very largely for the benefit of the lot—of course for the benefit of all traveling along the street; but it is almost a necessity for the proper improvement of a man's lot. If he has a large

lot, presumably he wants to improve the whole lot in harmony with the buildings or appointments of the lot, and he pays more in proportion to his property than a man who owns a 20 foot lot. But, as I have said, I think the principle may apply to sidewalks in the country, and the city would not be justified in requiring a man in the country owning agricultural lands, where there would be no real necessity of a pavement, and where it may be of very little benefit to the public, to pave the entire front of his property. If a man owned a farm of 50 or 100 acres, used for agricultural purposes, fronting a quarter of a mile or so on a paved street in a district mainly agricultural, with a few dwellings and small lots in the distance, and but little traveled, it would be unjust and oppressive to require him to put down a brick pavement the entire front of his property; and I say to you that if you find from the evidence that the defendant's lot is of that character, or in such a district, he is not liable in this case and your verdict should be for the defendant.

But it is contended by the city that the defendant's lot is not of that character, and it is not in such a district; and here really is the turning point of this case, in my judgment. There is very little dispute as to the facts in the case. And in order that the counsel may have the benefit of the instructions of the court, and that we may get at some principle, if possible, that may control this case and other cases, I shall refer to the facts; and if you find them as I have stated them, then I say to you it is not rural property in the sense of the law that exempts it from a claim of this character. These facts I shall state from the evidence, as I understand it. The plot in evidence, introduced by Mr. Bigelow, shows a location of this entire land, of the surrounding streets, and how the ground is laid out. We have the testimony of Mr. Bigelow, and also of the defendant, and I believe there is really no conflict in the testimony. I will endeavor to embody every material fact; and if, after I get through, the counsel wish me to add any other fact, or have any objection to what I state, let me hear it. I will state these facts in numerical order.

*First.* Frankstown avenue was graded and paved under the act of 1871; at the time it was largely a rural district. It was a road extending from the city out into the country a number of miles. It was graded and paved in 1872, from Penn avenue

to Fifth avenue, a distance of about one mile; from that to the city line, the distance of about another mile, it was not graded or paved.

*Second.* This lot, in front of which is the pavement in dispute in this case, is at the extreme end of the graded and paved portion of the avenue, the corner of Fifth avenue and Frankstown avenue; it contains about 6 acres, on which the defendant resides, has a fish pond and musical pavilion, and is largely planted in fruit trees and orchard, having a front on Frankstown avenue of 514 feet, extending back the extreme point perhaps 700 feet. I believe the avenue is on the south of the lot. Fifth avenue is on the east of it. To the west is what is called Finley street; there is a street, Shady lane, laid out running from Fifth avenue northwise, I presume, towards the city, and is open as far as Finley street, but is not open from Finley street to Fifth avenue, which bounds the northeastern portion of this lot.

*Third.* The defendant owns altogether about 56 acres of land. A portion of it lies east of Fifth avenue, on the ungraded portion of Frankstown avenue, a lot next to Fifth avenue used, I believe, as a brick yard, perhaps containing 6 or 8 acres; then intervenes some other property and beyond that again is a portion of the defendant's property. But the greater portion of the defendant's land lies north of the avenue and back some distance from it. It is used as agricultural land.

*Fourth.* Across Frankstown avenue, immediately opposite the defendant's lot, are some seven or eight houses; opposite, on the other side of Finley street, it is all laid out in small city lots and mostly built up with residences and some stores.

*Fifth.* Opposite to the defendant's lot is the lot of Mr. Torrence, nearly the same size as the defendant's lot, where Mr. Torrence resides, and these two lots, the lot of the defendant and the lot of Torrence, are the largest lots on the avenue between Penn avenue and Fifth avenue.

*Sixth.* From Penn avenue to Fifth avenue, a distance of nearly a mile, the properties on both sides of the street have been laid out into city lots and they are largely built up, and the sidewalks have been paved the whole distance on both sides of the avenue from Penn avenue to Fifth avenue.

*Seventh.* Beyond Fifth avenue Frankstown avenue has never been graded or paved, but the property has been laid out mainly

in city lots from that to the city line, a distance of about one mile. On the south of the avenue, according to the plan and testimony of Mr. Bigelow, it has all been laid out in small city lots and quite a number of residences built upon it. North of the avenue the lots are not laid out into small lots, but there are some plans recorded of lots and portions of ground north laid out in regular city lots. . . .

Now, if you find these facts as I have indicated, then I say to you that the defendant's lot is not rural property in the sense that it is exempt from liability for the sidewalk pavement, and your verdict should be for the plaintiff, in the amount of the lien filed with interest thereon.] 3

Verdict and judgment were for the plaintiff.

The assignments of error specified the portions of the charge inclosed in brackets and denoted by exponents respectively.

*Bruce, Negley, & Shields,* for plaintiff in error.—Under § 6 of the act of March 23, 1874, and the ordinance to carry the same into effect, all work and supplies required by the city are done and supplied by contract, duly awarded after public advertisement.

But the learned judge in the court below held that the paving of a public sidewalk by the city after notice to the property holder, and neglect on his part to pave the same, was not work required by the city, and that therefore the city was not required to advertise for bids, or to award the contract therefor to the lowest responsible bidder.

The grading and paving of streets and the construction of sewers are all done under contracts with the lowest responsible bidder, after advertisement in the city official papers.

The streets are graded to their full width and paid for by the property owners thereon. The whole width of the street is a city street, for the benefit of the public. The only difference in the use of the street is that three fifths of the street is for use as a cart way, and two fifths as a foot way for the public; and the care of both is in charge of the street department of the city, and that department made the contract for the work, and under § 6 of the act of 1874, it should have advertised for bids.

The fact that the property owner may have to pay for the pavement, and even to pay the contractor, makes it no less a .

public street, and he is entitled to no less protection in relation to the pavement than he would have in relation to the cart way.

The court erred in charging that the city had a right to recover on a lien filed against the property of Finley as being in front on Frankstown avenue 514 feet, and extending back about 120 feet.

The act of assembly and ordinance above cited provide that the city, after paving a sidewalk, may file a lien against the lot of the owner for the cost thereof. But in this case the city paved in front of a tract of land of 6 or 7 acres, which was part of a larger tract of 57 acres, through which were only two newly opened and unimproved streets.

And because of the lots being about of the same depth, the foot front measure of liability was deemed by the court not to be inequitable. Hammett v. Philadelphia, 65 Pa. 146, 3 Am. Rep. 615; *Re* Washington Ave. 69 Pa. 361, 8 Am. Rep. 255.

But since the enlargement of the cities by legislative enactment, without regard to their normal growth and without regard to the population of districts or the character of the territory included within the municipal boundaries, it has became apparent that the foot front rule of assessment of damages or benefits for public improvements is inequitable and cannot prevail, because in some districts of the city improvements are made where the property is partly in lots, partly in acres, and partly in large tracts of land, and in other districts there are no lots (in the ordinary sense) to be found.

The act of 1857 says that "the councils shall have power to direct or require any owner or owners of any lot or lots fronting on any street" "to pave or cause to be paved the sidewalk," etc., and then provides that in case the owner does not obey, that then the city shall pave, and may file a lien against said lot or lots, etc., for the cost of the paving.

There is no authority to file a lien, except as against the lot or lots of the owner.

There were no lots in this case. Finley had no lots on Frankstown avenue; he had a large tract of land. But the lien in this case is filed against 514 feet front on Frankstown avenue, and about 120 feet deep, the depth being arbitrarily fixed by the city without any authority of law or any local *data* relating thereto.

If, in the Washington Avenue Case, the legislature had no

power to enact that a certain quantity of land should pay as an assessment a certain sum of money as benefits for a public improvement, how can an officer of the city, without any legislative authority, say that about 120 feet in depth of Finley's property is alone benefited by the improvement, and that it is benefited thereby to the extent of the cost of the pavement?

*W. C. Moreland,* for defendant in error.—It was the duty of the owner to pave the sidewalk. It was his neglect of this duty that compelled the city authorities to procure it to be done by contract. The plaintiff having contracted with the city to do the work, the city having accepted the work as satisfactory, and the jury having found that there was a substantial compliance with the ordinance, the defendant has no cause for complaint. Watson v. Philadelphia, 93 Pa. 115; Philadelphia v. Burgin, 50 Pa. 545; Wilvert v. Sunbury, 81* Pa. 57; Protestant Orphan Asylum's Appeal, 111 Pa. 144, 3 Atl. 217.

PER CURIAM:

It is a mistake to suppose that the law governing the paving of streets applies to foot walks. The owner of the latter, on notice of the street commissioner, is bound to pave it or submit to have it paved for him by the contract of that officer.

Nor is the commissioner obliged to advertise for bids, in the absence of any law or ordinance specially requiring his so to do, for such an act would subserve no good purpose. The whole matter concerns the individual owner and not the public. He may, and ought to do it himself; but if he neglects or refuses so to do, and it is done for him, still he has the right to defend, both as to the price and quality of the work. This is all the defendant in this case could fairly ask; and as these grounds of defense were open to him he is without just cause of complaint.

The judgment is affirmed.